# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Case No. 26-cv-00129

DR. RAMESH K. SUNAR,

                Plaintiff,

v.

GRAY MEDIA, INC. (formerly GRAY
TELEVISION INC.) and
GRAY LOCAL MEDIA, INC., d/b/a
WBTV,

                Defendants.

## DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

Defendants Gray Media, Inc. and Gray Local Media, Inc. d/b/a WBTV (together "WBTV" or "Defendants"), respectfully submit this reply brief in further support of their Motion to Dismiss the Amended Complaint filed by the Plaintiff, Dr. Ramesh K. Sunar ("Plaintiff" or "Dr. Sunar").

In his opposition to WBTV's Motion to Dismiss ("Opposition" or "Opp."), ECF 18, Plaintiff asks the Court for an unreasonable reading of the news reports and relevant case law to elongate his meritless case. He fails to distinguish the case law WBTV cited in its opening brief ("Brief" or "Br."), ECF 15, establishing he has no legal claim because all publications are protected by the fair report privilege, the First Report and Social Media Posts are time-barred and admittedly accurate, and the Second Report is also accurate and lacks defamatory meaning. The Opposition discusses actual malice at length, even though this is not one of the many bases for dismissal outlined in WBTV's Brief. The Court need not consider this argument, as WBTV

cannot have acted with "purposeful avoidance of the truth" when the articles are accurate as published. Opp. at 16-20 (citing *Harte-Hanks Commc'ns, Inc. v. Connaughton,* 491 U.S. 657, 692 (1989).

Because black-letter defamation law bars Plaintiff's claims based on accurate reporting, this lawsuit should be dismissed in its entirety with prejudice.

### A. PLAINTIFF'S OPPOSITION BRIEF INCLUDES FACTUAL ERRORS

Throughout his Opposition, Plaintiff makes a series of errors, including the following:

1. Claiming a Florida bill is law when the bill was never enacted, *see* Opp. at 8-9, *infra* at 4;

2. Misstating the facts of a very similar decision affirming dismissal of a defamation claim for reporting based on expunged charges, *see* Opp. at 4-5, *infra* at 6-7;

3. Falsely claiming WBTV threatened to file a "countersuit" against him, Opp. at 25;

4. Claiming "Defendants' own initial Motion to Dismiss was denied as moot for having been filed in violation of this Court's Standing Order," *id.*, when it was denied as moot because Plaintiff filed a motion for leave to amend his complaint the same day WBTV's response to the complaint was due, and the Court granted Plaintiff leave, ECF 11;

5. Citing paragraphs of the Amended Complaint regarding an email and voicemail messages when these are not mentioned in these paragraphs, or at all, in the Amended Complaint, *see* Opp. at 2 (citing "(Am. Compl. ¶¶ 20-23, 35-39.)"), *see generally* Am. Compl.;

6. Referring to an April 2025 email as "Ex. K" to the Amended Complaint when he did not file an Exhibit K, *see* Opp. at 2, 9, *see generally* Am. Compl.; and

2

7.  Referring to Rachel Bonilla as WBTV's News Director when she is the station's Assistant News Director, *see* Opp. at 1, *cf.* Am. Compl. ¶ 36 (identifying Bonilla correctly as the Assistant News Director).

These errors are part and parcel of Plaintiff's efforts to punish WBTV for accurate reporting, the most recent of which was published in response to Plaintiff's request.

### B.  THE FIRST REPORT IS TIME-BARRED

As explained in WBTV's Brief, a defamation cause of action "accrues at the date of the publication of the defamatory words," *see Philips v. Pitt Cnty. Mem. Hosp., Inc.*, 222 N.C. App. 511, 526, 731 S.E.2d 462, 472 (2012), and Plaintiff did not bring suit until roughly 15 months after the First Report and Social Media Posts were published.  Plaintiff asks the Court to conclude North Carolina appellate courts would not adopt the single publication rule because the courts have not yet had the opportunity to address it, yet he does not and cannot cite a single jurisdiction that has declined to apply this rule.  *See* Opp. at 7-8.  That is because "[e]very state court that has considered the question applies the single-publication rule to information online."  *Pippen v. NBC Universal Media, LLC*, 734 F.3d 610, 615-16 (7th Cir. 2013) (collecting cases).

When presented with the question, federal courts in North Carolina have made a standard assumption that North Carolina courts would apply the single publication rule to widely-circulated publications like those challenged in this lawsuit.  *E.g.*, *Salinger v. Lawler*, 2026 WL 183622, at *4 n.6 (W.D.N.C. Jan. 23, 2026) (rejecting argument that publication of a paperback version of a book or additional shipments of the book edition would extend the statute of limitations because "this argument is foreclosed by the single publication rule"); *Hetzel v. ANC Healthcare, Inc.*, 2024 WL 5483576, at *5-*7 (W.D.N.C. Aug. 7, 2024) (analyzing single

3

publication rule's application to facts of case), *R.&R. adopted*, 2025 WL 895839 (W.D.N.C. Mar. 24, 2025);[1] *Johnson v. City of Raleigh*, 2013 U.S. Dist. LEXIS 93947, at **20-21 (E.D.N.C. Mar. 29, 2013) (dismissing defamation claim arising from a three-year-old internet publication).  As in *Johnson*, there have not been any revisions to the First Report or the Social Media Posts that would retrigger the statute of limitations.  *Id*.  Plaintiff acknowledges there have been no revisions.  *E.g.*, Opp. at 20 ("Defendants did not retract. They did not correct. They did not annotate."). In fact, the foundation of his lawsuit against WBTV is that it did not revise the First Report at his request.

The only cited authority propping up Plaintiff's argument that the Court should not apply the single publication rule is Fla. CS/HB 757, § 770.04, F.S, a bill that he misrepresents was enacted.  *See* Opp. at 8-9.  The bill died on second reading on the House floor. https://www.flhouse.gov/Sections/Bills/billsdetail.aspx?BillId=79383&.  Moreover, Florida appellate courts have indicated the single publication rule would apply to internet posts like those challenged here.  *See Swedberg v. Goldfinger's S., Inc*., 338 So. 3d 332, 336 (Fla. 3d DCA 2022) (in dicta, stating "Florida's single publication rule applies to publication over the internet"); *Norkin v. Fla. Bar*, 311 F. Supp. 3d 1299, 1304 (S.D. Fla. 2018) ("This Court declines Plaintiff's invitation to depart from the single publication rule for all material available on the internet

---

[1] In *Hetzel*, the court held the single publication rule did not apply to a healthcare provider database in response to new requests by potential employers searching for information about plaintiff.  In reaching this conclusion, it cited authority distinguishing this scenario from "mass publications" such as news reports where the single publication rule is applied.  *Id.* at *6 (*Swafford v. Memphis Individual Prac. Ass'n*, 1998 WL 281935, at *9 (Tenn. Ct. App. June 2, 1998).  Here, Plaintiff challenges online news reports, and the single publication rule squarely applies.

because it would eviscerate the statute of limitations and expose online publishers to limitless liability.").

Plaintiff has not identified any reason why North Carolina courts would be the sole outlier refusing to apply the single publication rule to news reports like those he challenges here. Because the First Report and Social Media Posts were published 15 months prior to Plaintiff filing his lawsuit and have not been altered since, his defamation claim and ancillary claims based on these publications should be dismissed as time-barred.

## C. EXPUNGEMENT DOES NOT CREATE LIABILITY FOR A NEWS REPORT THAT PLAINTIFF CONCEDES WAS ACCURATE WHEN PUBLISHED

Sunar concedes the First Report was accurate when published. Opp. at 9 ("Plaintiff acknowledges the report was accurate at that time" of original publication); *id.* at 10 ("Plaintiff does not dispute that the arrest occurred."); *id.* at 11 ("Plaintiff acknowledges the First Report was a substantially accurate report of official records when published on September 12, 2024."). He also acknowledges WBTV had no legal obligation to remove the First Report or Social Media Posts upon his request. *Id.* ("The expungement statute does not compel Defendants to remove their publications."). As in *Smith v. InformData, LLC*, "Plaintiff's own allegations establish that the fact he had a criminal record is substantially true," and therefore he cannot state a claim. 2026 WL 688957, at *9 (E.D. Va. Mar. 11, 2026) (dismissing the defamation claim where charges were expunged "[b]ecause the truth of Defendant's statements is clear from the" pleadings).

No court has found liability for preexisting news reporting following expungement of a charge or conviction. In addition to the cases cited in WBTV's Brief, every court to consider the issue has rejected defamation claims challenging news reports about criminal charges that were later expunged. *E.g.*, *Hardiman v. Aslam*, 125 N.E.3d 1185, 1193-94 (Ill. App. Ct. 2019)

5

(statements that plaintiff was convicted of domestic violence were accurate where defendant pleaded guilty to simple battery of his wife even though his guilty plea was expunged); *G.D. v. Kenny*, 15 A.3d 300, 315 (N.J. 2011) (explaining expungement "does not require the excision of records from the historical archives of newspapers" and affirming summary judgment on defamation claim); *Bahr v. Statesman J. Co.*, 624 P.2d 664, 666-67 (Or. App. 1981) (affirming dismissal because "in this civil defamation case, [defendant] was entitled to rely upon the fact that a conviction did occur as a defense"); *Lueckenbach v. Horizon Miss. Publ'ns, Inc.*, 2017 WL 473903, at *2 (N.D. Miss. Feb. 3, 2017) ("The fact that the charge was ultimately dropped and expunged has no bearing on the truth of the undisputed fact" of the charges); *Russell v. Del. Online*, 2016 U.S. Dist. LEXIS 80216, *9 (D. Del. June 20, 2016) (dismissing defamation claim because "[w]hile the underlying charges ultimately were dismissed, expunged, and/or sealed, this has no effect on the truthfulness of the articles at the time of their publication").

In his Opposition, Plaintiff attempts to distinguish one of these cases, *Martin v. Hearst Corp.*, 777 F.3d 546 (2d Cir. 2015), by misstating the facts and pointing out legally insignificant differences. He claims *Martin* only concerned "whether an expungement statute alone converts archived news into defamation," but that is the very argument he raises here. Opp. at 4. His entire case is premised on the argument that because the charges against him were expunged under North Carolina law, WBTV was required to remove the First Report on his arrest and never reference it again. *E.g.*, *id*. at 7 (arguing "the Expungement Order changed the legal character of the content after publication."). Plaintiff further argues this case is distinguishable because the "*Martin* defendants had no direct communication with the plaintiff regarding the expungement." *Id*. at 4. That is not accurate—the decision states Martin "asked each of the Defendants to remove the accounts of her arrest from their respective websites" and sued

6

"[w]hen the Defendants refused to remove the stories from their websites." *Martin*, 777 F.3d at 549. Plaintiff also alleges that in *Martin*, "no competitor outlet in the same market that received the same information and voluntarily removed its coverage" when the opinion makes no such representation. Opp. at 4. Needless to say, a competitor's editorial decisions have no bearing on WBTV's liability for maintaining accurate reporting online following an expungement.[2]

Plaintiff argues cases cited in WBTV's Brief are distinguishable because in those cases, "the publisher had no knowledge that the underlying proceedings had been legally nullified." Opp. at 6. But that is also the case here—at the time of publication of the First Report and Social Media Posts, WBTV had no knowledge the charges would eventually be dismissed and expunged from Dr. Sunar's record. Plaintiff otherwise asserts the fair report privilege "requires good faith," Opp. at 11, but cites no authority that would impose this extra requirement. His proposal would create an independent obligation for news outlets to monitor expungement proceedings, separate and apart from publishing accurate information at the time of criminal charges, raising serious First Amendment concerns.

The expungement of the charges against Dr. Sunar create a "legal fiction[], but it does not and cannot undo historical facts or convert once-true facts into falsehoods." *Martin*, 777 F.3d at 551. As truth "is a complete defense to an action for defamation," Dr. Sunar's defamation claims based on the First Report and Social Media Posts should be dismissed. *See Demarco v. Charlotte-Mecklenburg Hosp. Auth*., 268 N.C. App. 334, 344, 836 S.E.2d 322, 329, (2019).

---

[2] While not legally significant, the Second Circuit noted that the defendant-appellees did not publish an update on the expungement. *Martin*, 777 F.3d at 553 ("Reporting Martin's arrest without an update may not be as complete a story as Martin would like, but it implies nothing false about her."). Here, by contrast, WBTV published a follow-up report on the dismissal and expungement, so unlike Martin, Dr. Sunar can send a link to the Second Report to anyone asking about the status of his criminal charges.

### D. THE SECOND REPORT IS ACCURATE AND LACKS DEFAMATORY MEANING

Plaintiff takes issue with WBTV's "editorial choices" regarding the Second Report, *see* Opp. at 12-16, but those choices do not render the article false or defamatory. Statements that Plaintiff was once charged with misdemeanor child abuse are true, as are statements that the charges against him were dropped. Any reasonable reader would understand the Second Report to convey these charges against Dr. Sunar were expunged, which is not false or defamatory. *See Martin*, 777 F.3d at 553 ("Reasonable readers understand that some people who are arrested are guilty and that others are not. Reasonable readers also know that in some cases individuals who are arrested will eventually have charges against them dropped.").

Plaintiff complains that the Second Report's headline "leads with the accusation, not the exoneration," and the body of the article "republishes the specific warrant allegations." Opp. at 15. He also argues he should have been able to review the Second Report before publication to approve of the exact wording. *Id*. at 14. It is difficult to understand how WBTV could have reported on the expungement without referencing the charges. In any event, Dr. Sunar is far from the only person who would like to tell WBTV how to report the news. Providing every individual referenced in a news report with the opportunity to review and edit WBTV's reports is not only practically impossible, but contrary to the First Amendment's protections for free speech and free press.

When "consider[ing] the publication as a whole," the Second Report does not state or imply anything defamatory about Plaintiff and the claim should be dismissed. *Nucor Corp. v. Prudential Equity Grp., LLC*, 189 N.C. App. 731, 738, 659 S.E.2d 483, 487 (2008).

### E. PLAINTIFF'S OPPOSITION UNDERSCORES THAT THE ANCILLARY CLAIMS ARE DEFAMATION CLAIMS BY ANOTHER NAME

Plaintiff's Opposition underscores that his ancillary claims fail if his defamation claim is dismissed. *E.g.*, Opp. at 21 ("The sole source of reputational harm is WBTV's continued publication of legally nullified charges. That is not an end-run around defamation-it is defamation."); *id.* (alleging his tortious interference claims should not be dismissed because "truth is the contested issue in this case"); *id.* at 23 (claiming the emotional distress claims were part of "a thirteen-month pattern: personal pleas ignored, expungement verified and disregarded, a second article published that republished expunged allegations without the subject's input, and a legal threat against a pro se plaintiff who sought only the removal of legally nullified content").[3]  Because he has failed to state a claim for defamation, these ancillary claims also must fail. *See Daniels v. Metro Magazine Holding Co.*, 179 N.C. App. 533, 542, 634 S.E.2d 586, 592 (2006) (affirming dismissal of claims that "necessarily depend upon the viability of [plaintiff's] claim of libel").

### F. DISMISSAL WITH PREJUDICE IS APPROPRIATE

Prior to filing the Amended Complaint, Dr. Sunar had the opportunity to review WBTV's Motion to Dismiss the Complaint setting forth the many reasons he could not state a claim. *See* ECF 8.  No creative pleading by Plaintiff could lead to cognizable claims based on the accurate news reports at issue.  These deficiencies cannot be remedied, and Plaintiff's request that any dismissal be without prejudice should be rejected.  *See* Opp. at 24; *see also Perryman v. Town of*

---

[3] Upon information and belief, the "legal threat" Plaintiff refers to is undersigned counsel's warning that if he continues pursuing a frivolous lawsuit, WBTV may seek to recover its attorneys' fees.  WBTV has never threatened a "countersuit" as Plaintiff alleges.  *See* Opp. at 25.

*Summerfield,* 293 N.C. App. 116, 126, 899 S.E.2d 884, 892 (2024) (affirming dismissal with prejudice where "allowing further amendment … would be futile").

<u>**CONCLUSION**</u>

For the foregoing reasons and those set forth in WBTV's Brief, Defendants respectfully request that the Court dismiss Plaintiff's lawsuit in its entirety and with prejudice.

Respectfully submitted,

Dated: April 15, 2026

BALLARD SPAHR LLP

/s/ *Lauren P. Russell*

Lauren P. Russell (N.C. Bar #54372)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: (202) 661-2200
Fax: (202) 661-2299
russelll@ballardspahr.com

*Counsel for Gray Media, Inc. and Gray Local Media, Inc. d/b/a WBTV*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 15, 2026 the foregoing was electronically filed with the

Clerk of Court using the CM/ECF system and served on Plaintiff, *pro se*, via Email and U.S.

mail, addressed as follows:

> Dr. Ramesh K. Sunar
> 2809 Coltsgate Road
> Ste. 210
> Charlotte, NC 28211
> rsunar@yahoo.com

*/s/ Lauren P. Russell*
Lauren P. Russell
