# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:26-CV-00129-KDB-DCK

RAMESH K. SUNAR,

Plaintiff,

v.

GRAY LOCAL MEDIA, INC.
AND GRAY MEDIA, INC.,

Defendants.

**MEMORANDUM AND ORDER**

In September 2024, Plaintiff Dr. Ramesh K. Sunar was arrested, but the charges were ultimately dismissed and expunged. Defendants Gray Local Media, Inc. and Gray Media, Inc., (together, "WBTV") accurately reported on Dr. Sunar's arrest and then, at the request (and with the approval) of his lawyer, on the dismissal and expungement. WBTV declined, however, to delete its reporting, preserving the historical record. Claiming that he has been defamed by WBTV's coverage, Dr. Sunar filed this action seeking tens of millions of dollars in damages and removal of the WBTV articles from its archives.

Now before the Court is Defendants' Motion to Dismiss, Doc. No. 15. While Dr. Sunar's desire to undo the past is understandable, his legal claims against WBTV fail both procedurally because of the statute of limitations and substantively because the articles are indisputably truthful and well within the long-established privilege of the media to accurately report on criminal proceedings. Therefore, the Court will **GRANT** the motion.

1

## I. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The Court, however, accepts all well-pled facts as true and draws all reasonable inferences in Plaintiff's favor. *See Conner v. Cleveland Cty., N. Carolina*, No. 19-2012, 2022 WL 53977, at *1 (4th Cir. Jan. 5, 2022); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

In so doing, the Court "must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Pa. Nat'l Mut. Cas. Ins. Co. v. Beach Mart, Inc.*, 932 F.3d 268, 274 (4th Cir. 2019). Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Pledger v. Lynch*, 5 F.4th 511, 520 (4th Cir. 2021) (quoting *Ashcroft*, 556 U.S. at 678). Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

When deciding a motion to dismiss, "a court considers the pleadings and any materials 'attached or incorporated into the complaint.'" *Fitzgerald Fruit Farms LLC v. Aseptia, Inc.*, 527 F. Supp. 3d 790, 796 (E.D.N.C. 2019) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448).

Also, a *pro se* complaint, as here, must be construed liberally. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Smith v. Smith*, 589 F.3d 736, 748 (4th Cir. 2009) (Liberal construction of the pleadings is particularly appropriate where. . . there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement does not permit a district court to ignore a clear failure to allege facts in the complaint which set forth a claim that is cognizable under federal law. *Weller v. Dep't of Soc. Servs.,* 901 F.2d 387 (4th Cir. 1990).

## II.   FACTS AND PROCEDURAL HISTORY

On September 11, 2024, Dr. Sunar, who has been practicing dentistry in Charlotte since 2002, was arrested and charged with misdemeanor child abuse and communicating threats. Doc. No. 13 at ¶¶ 8, 12. The next day, WBTV published an article to its website regarding the arrest titled "Charlotte dentist charged with child abuse, records show." *Id.* at 7, (the "First Report"). In relevant part, the text of the article read:

> A Charlotte dentist is facing child abuse charges after he was arrested last week, court records show. Jail records revealed 61-year-old Ramesh Kumar Sunar was arrested on Tuesday, Sept. 10, and was charged with misdemeanor child abuse and communicating threats. An arrest warrant said Sunar 'inflicted physical injury' on a child younger than 16 years old. The injury allegedly caused bruising on the child's torso and neck, and was not caused by 'accidental means.' The warrant further stated that Sunar told a man 'he would beat the [expletive] out of him.' According to the warrant, both incidents happened on Sept. 2. . . . Sunar is listed as the lead doctor on Charlotte Dental Implant Center's website.

Doc. No. 15-2, at 1.

WBTV also aired a broadcast about the arrest, which included similar information and Dr. Sunar's mugshot. Doc. No. 13 at ¶¶ 18-19. Dr. Sunar's mugshot was also posted on WBTV's social media pages alongside a link to the First Report. *Id.* Dr. Sunar acknowledges that the First Report was accurate at the time of publication. Doc. No. 18 at 9.

Over a year later, in October 2025, Dr. Sunar's attorney notified WBTV that the charges had been dismissed and expunged from Sunar's record. Counsel requested that either a) the First

Report be removed or b) that an addendum be posted disclosing the dismissal and expungement of the charges. Doc. No. 13-1 at 10. WBTV responded that it could "offer [Dr. Sunar] a new article that states the outcome of the case," but that they would not remove or otherwise alter the original post due to its accuracy. *Id.* at 8-9. Dr. Sunar's attorney's response to WBTV's offer was "Yes please." *Id.* at 8.

On November 11, 2025, WBTV published the requested second article with the title "Charges dropped against Charlotte dentist accused of child abuse in 2024," and the subheading "Charges expunged in October 2025, officials confirm." Doc. No. 15-4 at 1, (the "Second Report"). The Second Report summarized Dr. Sunar's charges and confirmed that the charges had "been expunged on Oct. 10, 2025," explaining that the expungement of Dr. Sunar's charges meant he "was cleared of the charges, and they were dropped from his public record entirely." *Id.* at 3. WBTV provided Dr. Sunar's attorney with a link to the Second Report. Dr. Sunar's attorney replied, "Thank you!" Doc. No. 13-1 at 7.

In December 2025, Dr. Sunar filed this action in North Carolina state court, alleging, through a now Amended Complaint, claims of defamation, defamation pe se, tortious interference with business relations, intentional infliction of emotional distress, negligent infliction of emotional distress, and tortious interference with prospective economic advantage. He seeks $80 million in compensatory damages, punitive damages, removal of the articles and other injunctive relief. *See* Doc. No. 13. The action was timely removed under the Court's diversity jurisdiction, 28 U.S.C. § 1332, Doc. No. 1, and WBTV has moved to dismiss the Amended Complaint with prejudice. The motion has been fully briefed and is ripe for this Court's decision.

4

## III. DISCUSSION

As noted, Dr. Sunar's Amended Complaint includes six causes of action, all arising or closely related to his allegation of defamation. To be sure, Dr. Sunar has alleged that he has been harmed by the publication of the charges against him. Indeed, it has long been understood that the suspicion of criminal charges can often live on beyond their dismissal. *See* William Godwin, *Things as They Are; or, The Adventures of Caleb Williams* (1794) ("A man who has been once taken up on suspicion…can scarcely ever get rid of it."). Yet, the historical bell of the accurate reporting of Dr. Sunar's arrest cannot be unrung, at least not through legal claims against WBTV.[1] The reason why each of his claims fails is discussed below.

### A. Claims Arising from the First Report and Social Media Posts are Time-Barred

With respect to the First Report, Dr. Sunar's defamation claim is barred by the statute of limitations. Under North Carolina law, a defamation claim must be filed within one year of publication *See* N.C.G.S. § 1-54(3). WBTV's First Report was published in September 2024. This action was not filed until December 2025, almost fifteen months later. Thus, it is untimely.

Despite the clarity of the calendar, Dr. Sunar argues that his claims regarding the First Report are not time-barred because WBTV continues to maintain the articles in its website archives. That is, Dr. Sunar argues that the "single publication rule" doesn't apply to this case. Doc. No. 18. at 7. The Court disagrees.

The single publication rule "permits only one cause of action to be maintained for any single publication, even if heard or read by two or more persons." *Lokhova v. Halper,* 995 F.3d 144, 142 (4th Cir. 2021) (citation omitted). Subsequent distributions of allegedly defamatory

---

[1] The "expungement statute does not transmute a once-true fact into a falsehood." *Smith v. InformData, LLC*, No. 1:25-CV-826, 2026 WL 688957 at *9, (E.D.V.A. March 11, 2026) (citing *G.D. v. Kenny,* 205 N.J. 275, 15 A.3d 300, 313-16 (2011)).

5

content may increase a plaintiff's compensable damages, but they do not create independent causes of action or restart the clock of the statute of limitations. *Id.* The goal of the single publication rule is to "avoid the overwhelming multiplicity of lawsuits that could result from defamatory statements in mass publications such as newspapers and magazines." *Id.* (citation omitted). Also, "jurisdictions that have adopted the single publication rule are nearly unanimous in applying it to internet publications." *Id.*

"Republication" is an exception to the single publication rule. "Where there are 'separate aggregate publications on different occasions, then each of those separate instances of aggregate publication may constitute a separate, actionable instance of defamation." *Lifebrite Hospital Group of Stokes, LLC, v. Blue Cross and Blue Shield of North Carolina,* No. 1:18-CV-293, 2026 WL 1383204 at *11 (M.D.N.C. May 18, 2026) (citing *Hetzel v. ANC Healthcare, Inc.,* No. 1:23-CV-00152-MR-WCM, 2024 U.S. Dist. LEXIS 241642, at *13 (W.D.N.C August 6, 2024)). In such instances, "the publication reaches a new group and the repetition justifies a new cause of action." *Hetzel,* 2024 U.S. Dist. LEXIS 241642 at *13 (citation omitted). "In applying the single publication rule and the republication doctrine to internet-mediated communications, courts have been distinguishing what actions rise to the level of republication and what do not." *Id.* For example, the Fourth Circuit in *Lokhova* held that "a mere hyperlink, without more, cannot constitute republication." *Lokhova,* 995 F.3d at 143.

While North Carolina courts have yet to be presented with the opportunity to address the single publication rule, the Court notes that for decades "the great majority of the states [have followed] the single publication rule." *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 777 n.8 (1984) (citation omitted). Further, federal courts in North Carolina have repeatedly applied the single publication rule, especially, as here, in instances of widely-circulated publications. *E.g.,*

*Salinger v. Lawler,* No. 1:25-CV-293-WCM, 2026 WL 183633, at *4 n.6 (W.D.N.C. Jan. 23, 2026) (holding that the single publication rule foreclosed the argument that additional shipments of the same edition of a book extended the statute of limitations); *Lifebrite Hospital Group of Stokes, LLC,* 2026 WL 1383204 at *11-12 (holding that additional views of an online report did not constitute republications), *Johnson v. City of Raleigh,* No. 5:12-CV-210-Bo, 2013 U.S. Dist. LEXIS 93947, at *20 (March 29, 2013) (holding that a defamation claim arising from a three-year-old internet publication was time-barred as there had been no republication or alteration during those three years).

Dr. Sunar acknowledges that the First Report has not been revised and that it has been continuously published in the same format since its initial posting. Doc. No. 13 at 9 ("The First Report remains live and publicly accessible … the First Report has not been corrected, annotated, updated, or modified in any way…"). Accordingly, under the unbroken authority discussed above, the Court finds that North Carolina courts would hold that it falls within the single publication rule and any defamation claim regarding the First Report or Social Media Posts is time-barred.[2]

## B.      The Second Report Cannot Support a Defamation Claim

WBTV's Second Report occurred within the period of limitations, but fails to state a claim for defamation. To recover for defamation in North Carolina, "'a plaintiff must allege and prove

---

[2] Dr. Sunar argues that *Hetzel v. ANC Healthcare, Inc.*, No. 1:23-CV-00152-MR-WCM, 2024 U.S. Dist. LEXIS 241642, (W.D.N.C August 6, 2024), supports his position. Not so. *Hetzel*, which involves the application of the single publication rule to a private healthcare provider database, is very different from the facts here. Specifically, the "publications" in *Hetzel* involved search queries in a "Data Bank" that could only be accessed by a select group of individuals upon request. Therefore, the Data Bank was not "widely and generally available" and specific queries from it not a "single, aggregate publication." *Hetzel,* 2024 U.S. Dist. LEXIS 241642 at *15. In contrast, in this action, there is no question that the publication was made on the website of a major media company and thus plainly "widely and generally available."

that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation.'" *Turpin v. Charlotte Latin Schools, Inc.*, 293 N.C. App. 330, 351 (2024) (citing *Tyson v. L'Eggs Prods. Inc.,* 84 N.C. App. 1, 10-11, 351 S.E.2d 834, 840 (1987)).

First, and foremost, "[t]ruth is an absolute defense to an allegation of defamation." *Taube v. Hooper*, 270 N.C. App. 604, 612, 840 S.E.2d 313, 319 (2020) (citation omitted). Dr. Sunar does not contend, nor could he, that any statement in the Second Report is inaccurate. Moreover, the substance of the report is not even defamatory, stating that Dr. Sunar had been cleared of the charges against him and his public record expunged. *See* Doc. No. 15-4 at 2. And finally, the Second Report was prepared at the request of Dr. Sunar's attorney, who responded positively to its publication. In other words, Dr. Sunar seeks to recover on a defamation claim for a truthful publication put out at his request. The law cannot support such a result.[3]

## C. Dr. Sunar's Ancillary Claims Must Similarly be Dismissed

Dr. Sunar's other causes of action beyond defamation— tortious interference with business relations, intentional infliction of emotional distress, negligent infliction of emotional distress, and tortious interference with prospective economic advantage—stem from the same allegedly defamatory material. *E.g.,* Doc. No. 18 at 21 ("The sole source of reputational harm is WBTV's

---

[3] Also, the media's fair report privilege would support dismissal of Dr. Sunar's defamation claim. The privilege flows from "the absolute privilege which attaches to statements made in the due course of a judicial proceeding." *LaComb v. Jacksonville Daily News Co.*, 142 N.C.App 511, 12-13, 543 S.E.2d 219, 220-21 (2001) (citation omitted). Thus, with respect to reporting on Court proceedings, "[p]laintiff must prove by the greater weight of the evidence that the statement was materially false. If a statement is substantially true, it is not materially false. It is not required that the statement was literally true in every respect. Slight inaccuracies of expression are immaterial provided that the statement was substantially true." *Desmond v. News and Observer Publishing Company*, 375 N.C. 21, 68, 846 S.E.2d 647, 677 (2020). Again, here there is no claim of falsity.

continued publication of legally nullified charges. That is not an end-run around defamation—it is defamation.") The Fourth Circuit has previously foreclosed "such an end-run around First Amendment strictures." *Food Lion, Inc. v. Capital Cities/ABC, Inc.* 194 F.3d 505,522 (4th Cir. 1999) (citing *Hustler Magazine v. Falwell,* 485 U.S. 46, 56 (1988). Therefore, Sunar's ancillary claims will be similarly dismissed.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1.  Defendants' Motion to Dismiss with Prejudice (Doc. No. 15) is **GRANTED**; and

2.   The Clerk is directed to close this action in accordance with this Order

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 9, 2026

Kenneth D. Bell
United States District Judge

9